RAMÍREZ, PLAINTIFF AND APPELLEE, v. PUMARES ET AL., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Mayagüez in an Action of Ejectment and for Damages.

MOTION to Dismiss the Appeal.

No. 1900.—Decided February 27, 1920.

PURCHASE AND SALE — LUMP SUM — EVIDENCE — CONTRACT. — The purchaser of a property for a lump sum and not at a certain sum for a unit of measurement is not obliged to return the excess that may result in the area or to pay its value, and when the contract does not show that the vendee acknowl-

edged any right of the vendor or of any other person, evidence of such ac-
knowledgment is inadmissible, in accordance with section 25 of the Law of
Evidence, unless the contract is shown to be an independent one, and, as a
real right is involved, in order to show this, strong and convincing evidence
is required.

ID.—APPEAL—ADVERSE PARTIES—NOTICE OF APPEAL—WARRANTOR.—An appeal
will not be dismissed because no notice of the appeal was given to the war-
rantor when the judgment to be rendered by the Supreme Court will not de-
prive the purchaser of all or a part of the property purchased. In such cases
the warrantors are not adverse parties.

The facts are stated in the opinion.

Mr. R. del Toro Soler for the appellant.

Mr. J. Sabater for the appellee.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of
the court.

This is an appeal taken by the defendants from a judg-
ment of the District Court of Mayagüez of May 29, 1918, in
the terms hereinafter to be stated.

The following are the facts admitted by both parties and
also proved at the trial:

By a public deed executed in the city of Mayagüez on
April 20, 1908, before notary Rodolfo Ramírez Vigo, Seve-
riano Ramírez, with the consent of his wife, Isolina Marini,
sold to Rosalía Pabón, widow of Colberg, for the sum of
$500 a property consisting of 100 acres of land and a dwelling-
house situated in the ward of Boquerón of the Municipality
of Cabo Rojo, bounded on the north by property which for-
merly belonged to Francisco Ays and now belongs to Fran-
cisco Aimat; on the south by property of Severiano Ramí-
rez; on the east by property formerly belonging to Josefa
Carbonell and now belonging to Rodolfo Colberg and An-
tonio Martí, and on the west by the sea. The property is
a segregation from another property of 200 acres called Ca-
sabe and owned by the vendor. The said deed contains a
clause whereby "the purchaser reserves to the vendor the
right to have the property surveyed in order to divide it in
halves within the boundaries acknowledged by the adjoining
owners and waives in his favor all liability that may be im--

posed upon him as a result of the sale of the agricultural land within the said boundaries.''

By another deed executed in the city of Mayagüez before the same notary on May 12, 1908, Rosalía Pabón, widow of Colberg, sold to Pantaleón Rodríguez and Monserrate Acosta for the sum of $800 the property which she had acquired from Severiano Ramírez.

By another deed executed in Cabo Rojo on May 27, 1915, before notary Plinio L. Castro, Pantaleón Rodríguez, with the consent of his wife, Ana Padilla y Arroyo, sold to the minors Consuelo, Amparo and Donato Pumares y Valle, represented by their father, Donato Pumares Escabí, for the sum of $800 the undivided interest which he had in the said property of 100 acres with whatever rights and interests he had or might have in the said condominium, without any reservation.

By another deed executed on July 1, 1916, in the ward of Boquerón of the Municipality of Cabo Rojo before notary Miguel del Toro Colberg, Monserrate Acosta, with the express consent of his wife, María Padilla, sold to Miguel Carlo Pabón for the sum of $500 the condominium of an undivided half of the property of 100 acres which he had acquired by purchase from Rosalía Pabón.

In consequence of that sale Donato Pumares Escabí, representing his minor children Consuelo, Amparo and Donato Pumares y Valle, brought an action of redemption against Miguel Carlo y Pabón and his wife, Mercedes Aimat, in order to be subrogated to the right of ownership acquired by Miguel Carlo in the property of 100 acres of which the said minors were the joint owners. The minor plaintiffs obtained a judgment in their favor on August 18, 1916, and consequently by a public deed executed on October 9 of the same year before notary Ricardo del Toro Soler, the marshal of the District Court of Mayagüez conveyed to the said minors the interest which the spouses Miguel Carlo Pabón and Mercedes Aimat had acquired by purchase from Monserrate

Acosta, under the same conditions that attached to their purchase.

All the documents referred to were recorded in the Registry of Property of San Germán and there is no question about the several contracts embodied in them.

But in copying the said contracts into his complaint Severiano Ramírez alleges that when he sold the property of 100 acres to Rosalía Pabón it was estimated by the contracting parties that the principal property had an area of 200 acres, as it so appeared from the existing documents, and that thereafter the principal property was surveyed and found to have an area of 240 acres, whereupon the parties agreed that the plaintiff was entitled to the surplus of twenty acres which was included in the segregated portion, that is, the property sold by Ramírez to Rosalía Pabón; that on account of the excess of twenty acres it was agreed that it be considered as situated in the southern part of the principal property of 200 acres, the said twenty acres being bounded on the north by the 100 acres sold to Rosalía Pabón and now belonging to the defendants, the minor children of Donato Pumares; on the south by the remainder of the principal property belonging to the plaintiff; on the west by lands of Josefa Carbonell which now belong to Miguel Carlo y Pabón, and on the west by the sea; that it was further agreed between Severiano Ramírez and Rosalía Pabón immediately after the survey was made that the purchaser would continue in possession of the twenty acres on the condition that she should deliver to the plaintiff from each crop one-third of the products of the said parcel of land; that when Rosalía Pabón sold to Pantaleón Rodríguez and Monserrate Acosta jointly and undividedly the property of 100 acres the purchasers acknowledged that the parcel of twenty acres was the property of the plaintiff and accepted the agreement to deliver to him one-third of the crops produced on the parcel of twenty acres and complied with that agreement; that when Pantaleón Rodríguez sold his undivided half in the property

of 100 acres to Donato Pumares as the representative of his minor children Consuelo, Amparo and Donato, Donato Pumares acknowledged, having been informed of that fact by vendor Rodríguez at the time, the right of ownership of the plaintiff in the parcel of twenty acres and the contract of usufruct existing between Pantaleón Rodríguez and Severiano Ramírez, and Donato Pumares agreed with plaintiff Ramírez in July, 1916, to deliver to him one-third of the crops grown on the parcel of twenty acres and also to deliver to him the land itself after the crop was gathered because he did not want to extend the contract of usufruct; that when Monserrate Acosta sold his interest to Miguel Carlo y Pabón the latter also acknowledged the plaintiff's ownership of the parcel of twenty acres included within the enclosed area of the one-half of the principal property; that Donato Pumares planted corn on the parcel of twenty acres and the crop of 1917 yielded 600 quintals which he sold at $3 a quintal, realizing on the said crop the sum of $1,800, of which he has not delivered to the plaintiff the $600 coming to him for his third of the crop, and also that he had again planted the parcel of twenty acres in corn and the crop would yield at least 600 quintals, which, at the rate of $3, would amount to $1,800; that the parcel of twenty acres has a present value of $1,000.

The prayer of the complaint is for judgment against defendant Donato Pumares for the sum of $1,200 as the plaintiff's share of the corn produced and also the sum of $1,000 as the value of the parcel of land, the judgment to provide that in case the defendant should refuse to pay these sums the plaintiff is the sole owner of the parcel of land and it shall be delivered to him.

Defendant Donato Pumares and Antonio Valle, as guardian ad litem of the minor children of Pumares, both demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action against them, adding that even if it did the action was barred by limitation

under sections 1372 to 1375 of the Civil Code. The demurrer was overruled by the court.

At Donato Pumares' instance Pantaleón Rodríguez, Monserrate Acosta and Miguel Carlo Pabón, former vendors of the property in controversy, were summoned in warranty.

Donato Pumares and his minor children answered the complaint and admitted the several contracts of sale therein set forth, but denied positively that the land sold was surveyed and found to contain a surplus in area of twenty acres and that he had entered into any contract with his vendors concerning the surplusage.

Pantaleón Rodríguez, Monserrate Acosta and Miguel Carlo Pabón also answered the complaint and after admitting the allegations therein contained prayed to be freed from all liability by the judgment to be rendered.

After trial the court entered judgment on May 29, 1918, to the effect that Severiano Ramírez was the sole and exclusive owner of the parcel of twenty acres described, which must be delivered to the plaintiff, adjudging further that Severiano Ramírez recover from defendant Donato Pumares Escabí the sum of $600, the amount of his share in the crops that the latter had harvested from the said parcel of land, with the costs, expenses, disbursements and attorney fees against the defendant.

From that judgment counsel for Donato Pumares and his children took an appeal to this court, assigning as error: First, that the court erred in overruling the demurrer on the ground that the complaint did not state facts sufficient to constitute a cause of action; second, that it likewise erred in overruling the demurrer on the ground that the action was barred by limitation; third, that it also erred in giving to the evidence of the plaintiff greater weight than it deserved.

In support of the first and second errors assigned the appellant alleges that the minors acquired the two tracts of land which constitute the property of 100 acres segregated from the 200 acres of Severiano Ramírez for a lump sum and

not for a certain price for a unit of measurement, therefore they did not assume the obligation to deliver to the plaintiff any excess that might result, or its value. However, as Severiano Ramírez bases his action not only on the excess of twenty acres found in the land which Pumares acquired through a chain of titles descending from Ramírez, but also on an agreement made with Pumares that the latter should remain in possession of the parcel of twenty acres and return it later, giving him a share of one-third of the crops gathered in the meantime, we are of the opinion that the sections of the Civil Code cited by the appellants in support of their demurrers are not applicable to the case.

Let us examine the third assignment of error regarding an erroneous weighing of the evidence.

Severiano Ramírez testified that when he gave the deed of sale to Rosalía Pabón they had the property surveyed by a surveyor from Lajas whose name he did not remember and who, he believed, died; that the surveyor made no plat of the property, for the survey was made solely to ascertain whether or not there were 200 acres and showed that there was an excess of twenty acres in the part sold; that when Donato Pumares purchased the two interests of Monserrate Acosta and Pantaleón Rodríguez he agreed with Ramírez to keep the parcel of twenty acres and cultivate it, giving Ramírez the benefit of one-third of the products, but that he had not fulfilled that agreement; that Ramírez interested himself in the sale made by Pantaleón Rodríguez to Donato Pumares, advising Pumares to make the purchase, and as there was an excess of ten acres in the part sold by Pantaleón, it was agreed that Pumares would receive a deed to the fifty acres and would keep the parcel of ten acres and cultivate it for two-thirds of the products, as Pantaleón Rodríguez had done, and that when Miguel Carlo purchased from Monserrate Acosta the latter informed the purchaser that there were sixty acres in the parcel of land which he was selling, but that he was selling him only fifty acres be-

cause the remainder belonged to Ramírez, and Carlo, not believing this statement, ordered a survey of the property and found that in fact in the two properties there was (a surplus of) twenty acres which Miguel Carlo offered to purchase from Ramírez because it did not suit him to hold land for one-third of the products, and Ramírez having refused to sell, Carlo agreed to keep the parcel of twenty acres and cultivate it for two-thirds of the products; that the 120 acres form one single property and the twenty acres can not be materially identified by boundaries, although the parcel is bounded by the property of Severiano Ramírez.

Pantaleón Rodríguez testified that he and Monserrate Acosta purchased from Rosalía Pabón a property of 100 acres, but as the vendor said to them that there was in the property an excess of twenty acres which belonged to Severiano Ramírez, they retained that land and cultivated it on shares, giving Ramírez half of the products when he furnished the seeds and one-third when they furnished their own teams and seeds, with which agreement they complied; that when he sold his interest to Donato Pumares he explained to Pumares the agreement with Ramírez and Pumares accepted the sale on that basis; that they purchased the property without surveying it and while they were the owners they never took the trouble to do so, but it was later surveyed when Donato Pumares and Monserrate Acosta owned it.

Monserrate Acosta testified that he and Pantaleón Rodríguez purchased from Rosalía Pabón a property of 100 acres and as there was in it an excess of twenty acres belonging to Severiano Ramírez, they also kept that parcel and gave Ramírez one-third of the products during the six or seven months that they owned the property; that when he sold to Miguel Carlo Pabón he told him of this arrangement and, desiring to ascertain whether in fact there was an excess of twenty acres, Acosta sent for a surveyor who surveyed the property and found that it contained 120 acres; that when they purchased the property they accepted it as having an

area of 120 acres without taking the trouble to survey it; that the name of the surveyor to whom he referred was Grullé and that he knows that the survey showed 120 acres because the surveyor told him so and charged him $18.34, the work having been agreed upon at the rate of twenty cents an acre, and that when he and Pantaleón Rodríguez cultivated the property they knew where the twenty acres of Severiano Ramírez were situated, that is, on the boundary line between their property and that of Severiano Ramírez, forming a point of land from east to west.

Miguel Carlo testified that he bought from Monserrate Acosta a property of fifty acres which was an undivided part of a larger property of 100 acres and Acosta told him that it contained sixty acres of which ten acres belonged to Severiano Ramírez; that he asked Acosta to have it surveyed and he sent for Gil who surveyed it and found that it contained 120 acres; that by order of Acosta he paid $16 or $17 for the survey, but no plat was made of the property; that when he bought the fifty acres from Monserrate Acosta he wrote to Severiano Ramírez asking him whether he wished to sell the ten acres belonging to him or to have its boundaries fixed and Ramírez replied that the latter would suit him; that Donato Pumares objected to this and he could not fix the boundaries, and that the ten acres were in the southern part of the property, running from east to west.

Gumersindo Luna testified that he was one night at the house of Severiano Ramírez and in the morning Donato Pumares came to tell Ramírez not to send Gil to survey the twenty acres because he (Pumares) did not want to see him there, and that he would retain the twenty acres and give one-third of the products.

In connection with that testimony of Gumersindo Luna, plaintiff Severiano Ramírez explained that Miguel Carlo, knowing that Donato Pumares had deposited some money for the redemption of the property which Carlo had purchased from Monserrate Acosta, tried to purchase from the

witness the twenty acres to which this action refers and the witness told him that he would have them surveyed and located in order to determine whether it was convenient for him to sell; that he wrote a letter to the surveyor asking him to come the next Monday to survey the property so as to locate the twenty acres of Monserrate Acosta and Pantaleón Rodríguez, and he also wrote to Pumares and Miguel Carlo informing them that a survey was to be made so that they could be present; that the same messenger carried both letters to the addressees and Pumares replied that inasmuch as the matter was in court he would not allow anybody to enter the property and he himself would not go, and then the witness sent word to Pumares by the same messenger that on the following day he would ask the court for an official survey; that desiring to avoid this, Pumares called on the witness at about four or five o'clock in the morning and they agreed in the interest of harmony that Pumares would retain the twenty acres for one-third of the products, as Pantaleón Rodríguez and Monserrate Acosta had done; that Pumares accepted the twenty acres on these conditions and on one occasion, or on November 8, 1916, he wrote the witness a letter asking for some cotton seed with which to plant the twenty acres, and that a brother of Pumares, named José Escabí, in the years 1915 and 1916, also planted corn and cotton on a parcel of ten acres on the boundary line between the twenty acres and the other lands of Ramírez. Severiano Ramírez exhibited the letter to which he referred in his testimony and it was acknowledged by Donato Pumares. It reads as follows:

"DEAR DON SEVERO: The land has been plowed for some time but I have been unable to plant it. I have decided, as it is late in the season, to plant cotton and beans, therefore I need some cotton seeds; tell me whether you have any so that I may send for them to make up what I lack. Tell me whether you have any, for as soon as we have two or three dry days I will begin to plant.—Yours very truly, D. S. Ps."

Donato Pumares, known as Donato García Escabí, says
that he had no other transaction with Pantaleón Rodríguez
than that embodied in the deed of sale of the latter's inter-
est in the property of 100 acres and that Pantaleón Rodrí-
guez said nothing to him about there being in the property
twenty acres belonging to Ramírez, but he heard about this
later, that is, after he brought the action of redemption
against Miguel Carlo; that he planted corn on some twenty
acres of land of Severiano Ramírez adjoining his own land
under an agreement with Ramírez, but that that property was
apart from that of the witness and separated from it by a
wire fence; that the crop produced a little over $350; that
he gave Severiano Ramírez in advance on account of his
share an order on Antonio Valle for $70, and $37 and some
cents in cash, and that the letter which he identified, exhibited
by Severiano Ramírez, refers to seeds for planting the land
which Ramírez had rented to him and not to other land.

The order for $70 referred to by Pumares is a check drawn
on February 1st, 1917, against the "Caja de Economías y
Préstamos de Cabo Rojo" to the order of Severiano Ramí-
rez and signed by Antonio Valle, and Severiano Ramírez
admits that he collected the check and also that Donato Gar-
cía paid to him thirty-seven dollars and some cents, these
sums being in payment of what José Escabí, brother of Do-
nato Pumares, owed him for the corn produced on the land
which he had rented to him for planting.

Witness Sebastián Arroyo testified that he had worked
on some land belonging to Severiano Ramírez which he had
rented to Donato Pumares for planting corn, the said land
adjoining the property of Pumares.

Such is, in brief, the evidence examined at the trial in
connection with the relief sought by the plaintiff in his com-
plaint.

Whatever may have been the agreements between Seve-
riano Ramírez and Rosalía Pabón, between the latter and
Pantaleón Rodríguez and Monserrate Acosta, and between

Monserrate Acosta and Miguel Carlo Pabón with respect to the excess of twenty acres presumed to exist in the half of the property of 200 acres belonging to Ramírez, of which half the minor children of Donato Pumares became the owners by virtue of successive conveyances, the said agreements do not affect or bind in any manner the representative of the said minors, for they were not recorded in the registry of property. And although we should admit that the minor purchasers acquired the interest of Pantaleón Rodríguez after having been informed by the latter that Ramírez was the owner of an excess of twenty acres in the 100 acres of which the land sold to the minors was part, that fact was not made to appear in the deed of sale, which was the last expression of the intention of the contracting parties and must govern the transaction. *Cintrón & Aboy* v. *Solá,* 22 P. R. R. 245.

As to the acquisition by the minors from Miguel Carlo under their right of redemption, they acquired from Carlo without acknowledging in the deed any dominion right in favor of Ramírez and that deed became the law of the contract.

We consider as applicable to this case section 25 of the Law of Evidence of March 9, 1905, as follows:

"Sec. 25.—When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore, there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing, except in the following cases:

"1. Where a mistake or imperfection of the writing is put in issue by the pleadings..

"2. Where the validity of the agreement is the fact in dispute.

"But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in section thirty-four, or to explain an extrinsic ambiguity, or to establish illegality or fraud. The term 'agreement' includes deeds and wills, as well as contracts between parties."

And section 28 reads as follows:

"Sec. 28.—For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument and of the parties to it may also be shown, so that the judge be placed in the position of those whose language he is to interpret."

It is to be observed that the plaintiff does not allege any mistake or imperfection in the title deeds of the defendant minors, nor assail their validity, nor submit them to the construction of the court; therefore, none of the exceptions referred to in section 25, *supra,* being involved, we must conclude that the deeds of May 27, 1915, and October 9, 1916, whereby Donato Pumares acquired for his children the lands which they now own, should be considered as containing all of the conditions of the contracts of purchase and sale embodied in them.

As we said in *Morales et al.* v. *Díaz et al.,* 24 P. R. R. 691, "This rule is something more than a mere question of proof. It is a declaration of policy by the Legislature. It is designed, like the English Statute of Frauds of which it is the offspring, to prevent controversies of the nature before us."

But even admitting that the acknowledgment by Pumares of the ownership of the twenty acres of land by Severiano Ramírez, to which Severiano Ramírez as well as witnesses Miguel Carlo and Gumersindo Luna refer and which is denied by Donato Pumares, was a totally independent contract, the proof of such a contract, in order that its existence may be established, must be strong and convincing, considering the fact that it involves the acknowledgment of a real right in favor of Ramírez of a part of certain lands acquired by public deeds for the minor children without reserving such right.

In transactions in which deeds, private documents or any basis of written evidence are ordinarily made use of, as in the creation, conveyance, modification or extinction of real rights, section 1216 of the Civil Code warns the courts to

be careful to avoid that by the simple coincidence of some depositions, unless their truthfulness be evident, the matters involved in such transaction may be definitely decided.

The evidence introduced at the trial by the plaintiff is not strong and convincing, but very defective. It does not satisfy us. It does not appear with certainty who was the surveyor who surveyed the land, for the plaintiff says that it was done by a surveyor from Lajas whose name he does not remember, and who, he thinks, died. Witness Monserrate Acosta designates him by the name of Grullé and witness Miguel Carlo by the name of Gil, and although all three state that the survey was made, no plat of the land was prepared, and no showing thereof was left in writing, as was natural and proper to be done by a person who takes ordinary care in his own affairs.

The plaintiff-appellee moved for the dismissal of the appeal because the notice of appeal was not served on the persons summoned in warranty, Pantaleón Rodríguez, Monserrate Acosta and Miguel Carlo Pabón, and the hearing on that motion was set for the same day as the hearing on the appeal.

It is true that no notice of the appeal was served on the said persons, but we are of the opinion that such notice was not necessary, they not being adverse parties in the case, for, as we have repeatedly held, the term ''adverse party'' referred to in section 296 of the Code of Civil Procedure includes only those parties who would be affected by a reversal or modification of the judgment appealed from. *Galfar* v. *Morales*, 22 P. R. R. 458.

In reversing the judgment below, which is the conclusion finally reached, Pantaleón Rodríguez, Monserrate Acosta and Miguel Carlo Pabón will suffer no prejudice, for, according to section 1378 of the Civil Code, eviction shall take place when by a final judgment, and by virtue of a right prior to the sale, the vendee is deprived of the whole or of a part of the thing purchased, and under the judgment which we

must render the defendant purchasers, at whose instance the warrantors were summoned, will not be deprived of the whole or a part of the lands which they acquired.

For the reasons stated the motion for dismissal of the appeal must be overruled and the judgment of the District Court of Mayagüez of May 29, 1918, reversed, without costs.

*Motion overruled and judgment reversed.*

Justices Wolf, del Toro, Aldrey and Hutchison concurred.